IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
S. SHANE SMITH,              )
                             )
          Plaintiff,         )
                             )
     v.                      )         1:16CV396
                             )
FRANK L. PERRY, et al.,      )
                             )
          Defendants.        )
```

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant Julia Peeler's Motion for Summary Judgment (Docket Entry 60). (See Docket Entry dated Mar. 13, 2018.) For the reasons that follow, the Court should deny the instant Motion.

Plaintiff, a state prisoner proceeding pro se, commenced this action by filing a complaint under 42 U.S.C. § 1983 against more than a dozen state prison officials and employees, including Defendant Peeler. (See Docket Entry 1.)[1] The complaint does not clearly set forth particular claims against particular Defendants.

---

[1] Plaintiff's complaint consists of a five-page form for state prisoner claims under Section 1983 (Docket Entry 1 at 1-5), which (as to all material elements) he completed only by directing the reader to an attached, 18-page, typewritten document, which he signed under penalty of perjury (id. at 6-23). This Recommendation generally will cite to that latter portion of the complaint by reference to Plaintiff's internal section numbers and paragraph letters/number(s) (e.g., "§ III, ¶ A" or "§ IV, ¶ 1"). Plaintiff also appended 99 pages of exhibits to his complaint. (Docket Entry 1-1.) This Recommendation will cite those exhibits by the page number assigned to them in the CM/ECF footer added at docketing.

(See id., § IV, ¶¶ 1-75.)  It does, however, generally assert a claim against "prison official Defendants" for "sexually abus[ing], harass[ing], and manipulat[ing] prisoners in their care[.]" (Id., § IV, ¶ 2.d.)  "Sexual abuse of an inmate may be actionable where a correctional officer is in a position of authority over a prisoner.  Sexual assault is 'not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm[s] suffered by a victim of such abuse are compensable injuries' under Section 1983." Smith v. Beck, No. 1:08CV166, 2011 WL 65962, at *5 (M.D.N.C. Jan. 10, 2011) (unpublished) (quoting Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998)), recommendation adopted, 2012 WL 1340766 (M.D.N.C. Apr. 18, 2012) (unpublished), aff'd, 577 F. App'x 196 (4th Cir. 2014); see also Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016) ("There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation.").

As concerns such a sexual abuse claim against Defendant Peeler, the complaint avers that:

1) "[i]n 2014, Defendant Peeler involved [Plaintiff] in an unsolicited emotional and physical relationship" (Docket Entry 1, § IV, ¶ 22);

2) "Defendant Peeler was [Plaintiff's] work supervisor" (id.; see also id., § III., ¶ K (identifying Defendant Peeler as "Food

Service Manager I"); id., § IV, ¶ 57 ("[Plaintiff] was the inventory clerk for the Food Service Department."));

3) Plaintiff "submitted a grievance" (id., § IV, ¶ 31), which he attached to and "incorporate[d]" into his complaint (id., § IV, ¶ 32; see also Docket Entry 1-1 at 20 ("**Grievance Statement**: A high-ranking prison official . . . has involved me in a [sic] emotional and physical relationship which violated policy and state and federal statutory law (PREA [Prison Rape Elimination Act[2]]). These encounters have happened within the past twelve months. . . . I am very stressed. I am not eating properly. I have lost nearly 30 pounds. My sleep patterns are erratic. When I do sleep, I am having terrible dreams. I am trying mental health . . . ." (emphasis in original) (signed on October 28, 2014)));

5) "[i]n approximately March of 2015, [Plaintiff] was . . . interviewed by two prison officials" (Docket Entry 1, § IV, ¶ 43);

6) "[t]he two investigators told [Plaintiff] . . . they were there to investigate [his PREA grievance]" (id., § IV, ¶ 44); and

7) "Defendant Peeler was charged with three (3) counts of sexual misconduct by a government employee" (id., § IV, ¶ 47).

---

[2] "PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. [It] does not grant prisoners any specific rights." Chapman v. Willis, No. 7:12CV389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) (unpublished) (internal ellipsis and quotation marks omitted).

Defendant Peeler's answer admits that she and Plaintiff engaged in "an emotional and physical relationship," but asserts that he "initiated" it. (Docket Entry 46, ¶ 22.) In addition, Defendant Peeler's answer concedes that, "[a]s a result of said conduct [she] was terminated from her position as Food Service Manager I . . . . [She] was charged with three counts of sexual misconduct by a government employee. . . . [She] plead[ed] guilty to one count of crimes against nature . . . ." (Id.)[3]

Defendant Peeler subsequently filed her instant Motion (Docket Entry 60), along with an affidavit (Docket Entry 60-1) and a brief (Docket Entry 61). Her affidavit states in pertinent part: "I did have an inappropriate relationship with Plaintiff []. However, I take issue with his allegation that I solicited him. In fact, he flirted with me repeatedly and otherwise enticed me into the inappropriate activities. The relationship was at all time [sic] and in every way consensual." (Docket Entry 60-1, ¶ 10.)

Defendant Peeler's brief seeks summary judgment on Plaintiff's sexual abuse claim, on the ground that "[t]he uncontested evident

---

[3] North Carolina's crimes against nature statute, N.C. Gen. Stat. § 14-177, originally proscribed "all forms of oral and anal sex," State v. Stiller, 162 N.C. App. 138, 140 (2004); however, following the ruling in Lawrence v. Texas, 539 U.S. 558 (2003), the North Carolina Court of Appeals restricted the statute's "use[] to prosecut[ion of] conduct in which a minor is involved, conduct involving non-consensual or coercive sexual acts, conduct occurring in a public place, or conduct involving prostitution or solicitation," State v. Whiteley, 172 N.C. App. 772, 779 (2005), quoted with approval, State v. Hunt, 365 N.C. 432, 440 (2012).

[sic] is that the relationship between Plaintiff and Defendant Peeler was consensual. (Affidavit of Peeler). A consensual relationship cannot be the subject of a state law battery claim, much less a claim brought pursuant to [Section] 1983." (Docket Entry 61 at 4; see also id. at 5-6 ("At most, the evidence before the [C]ourt is that Plaintiff [] and Defendant Peeler engaged in an improper, yet consensual inappropriate physical relationship . . . . Not once did Plaintiff in his pleadings or attachment . . . allege[] that the relationship was nonconsensual. . . . [A]n inappropriate physical and emotional . . . or even sexual relationship between an incarcerated individual and a prison kitchen supervisor fails to rise to a [Section] 1983 claim, absent evidence that the relationship was nonconsensual on the part of the individual incarcerated . . . .").)

Plaintiff filed a response (Docket Entry 73),[4] supported by an affidavit (Docket Entry 74), as well as numerous exhibits (see Docket Entry 70 at 1-2 (cataloging 29 exhibits, docketed as Docket Entries 70-1 through 70-20, Docket Entry 71, and Docket Entries 71-1 through 71-8)). Plaintiff's affidavit includes these averments pertinent to his sexual abuse claim against Defendant Peeler:

---

[4] Plaintiff's response addresses both Defendant Peeler's instant Motion and a separate summary judgment motion filed by the other Defendants. (See Docket Entry 73 at 1; see also id. at 3-5 (discussing Defendant Peeler), 5-13 (discussing other Defendants).) In opposing summary judgment for Defendant Peeler, Plaintiff did not argue that he had asserted claims against her other than for sexual abuse. (See id. at 1-5.)

-5-

1) Plaintiff "was arrested at the age of 20, and was subsequently admitted to the North Carolina Department of Public Safety . . . where [he] remain[s]" (Docket Entry 74, ¶ 2);

2) "[p]rior to [his] arrest and incarceration, [Plaintiff] lived [his] entire life with [his] biological parents" (id., ¶ 3);

3) Plaintiff "ha[s] never had a real adult relationship" (id., ¶ 5);

4) Plaintiff "ha[s] no fingers or toes" (id., ¶ 6);

5) "[w]ith [his] disability, [Plaintiff is] often and regularly ostracized" (id., ¶ 14);

6) "[s]ometime during the fall of 2013, [Defendant] Peeler . . . transferred . . . to the [prison dining] facility where [Plaintiff] worked" (id., ¶ 45);

7) "[o]n approximately January 17, 2014, while [Plaintiff] was working [his] assigned job [in the prison dining facility], [Defendant] Peeler walked up to [him], looked [him] squarely in the eyes, and simply said, 'I could have you if I wanted'" (id., ¶ 64);

8) Plaintiff "responded . . ., 'No, you could not'" (id.);[5]

---

[5] According to the "PREA Investigation Notes" (compiled by Captain Jean Martin of the North Carolina Department of Public Safety) which Plaintiff filed with his response, he recounted the same event during an interview on January 9, 2015. (Docket Entry 71 at 12; accord id. at 31; Docket Entry 71-1 at 2.) In that interview, Plaintiff also stated that, on one occasion, when he "[t]ried to break it off w[ith Defendant Peeler], . . . she had dropped her pants and he had intercourse with her." (Docket Entry 71 at 13-14; see also id. at 15 ("[Defendant Peeler] performed oral sex on [Plaintiff] . . . . [H]e did tell her to stop, [and that
(continued...)

9) Plaintiff "did not solicit [Defendant] Peeler's attentions, nor did [he] want [her] attentions" (id., ¶ 66);

10) Plaintiff "even tried to resist [Defendant] Peeler's attentions" (id.);

11) "[f]rom the early onset of being pursued by [Defendant] Peeler, [Plaintiff] told her that [he] would not go down that road with her" (id., ¶ 67);

12) Defendant Peeler "wrote [Plaintiff] a note on a yellow Post-It note pad proclaiming that she did not want to lose [him]" (id.; see also id. ("A copy of that note is attached hereto as **Exhibit 06**." (emphasis in original)); Docket Entry 70-6 at 1 (document marked "Exhibit 06" stating "Don't want to lose you!"));

13) "[Defendant] Peeler brought [Plaintiff] pictures of herself" (Docket Entry 74, ¶ 68; see also id. ("A copy of the pictures is attached hereto as **Exhibit 07**." (emphasis in original)); Docket Entry 70-7 at 1 (photocopy of photographs marked "Exhibit 07")); and

---

⁵(...continued)
he] did not want her attention."), 31 ("[O]ne day in approximately May 2014, [Plaintiff] had told [Defendant] Peeler that [Plaintiff] could not continue the path [they] were on. [Plaintiff] said that [Defendant] Peeler wrote a note to [Plaintiff] that simply said, 'Don't want to lose you!' [Defendant] Peeler asked [Plaintiff] for a hug. She pulled down her pants, grabbed [his] crotch, and said 'Fuck me!' [They] engaged in intercourse."); Docket Entry 71-1 at 3 ("When asked if he told [Defendant Peeler] to stop [Plaintiff] stated he did tell her to stop, that he did not want her attention . . . ." (all-caps font altered)).)

-7-

14) Defendant Peeler "also mailed [Plaintiff] numerous cards" (Docket Entry 74, ¶ 69; see also id. ("A copy of those cards are [sic] attached hereto as **Exhibit 08**." (emphasis in original)); Docket Entry 70-8 at 1-20 (photocopies of cards and envelopes marked "Exhibit 08")).

Additionally, among his exhibits, Plaintiff submitted "PREA Investigation Notes" and witness statements taken by Captain Jean Martin of the North Carolina Department of Public Safety, documenting that:

1) a Salisbury Police Department detective confirmed that, on February 3, 2015, Defendant Peeler "confessed to two oral sex incidents and one vaginal intercourse incident[]" with Plaintiff, but "tried to say [he] forced her on the intercourse incident" (Docket Entry 71 at 18); and

2) on February 5, 2015, Defendant Peeler admitted to Captain Martin that she and Plaintiff engaged in intercourse "vaginally" (once) and "oral sex" ("2 times"), although she contended that, as to the former, she "tr[ied her] best to make him stop but he was very forceful and he kept going pulling at [her] clothes" and she "kept telling him to quit but [she] was unable to stop him" and, as to the latter, she "felt trapped" (id. at 37; see also Docket Entry 71-1 at 5 ("[Defendant] Peeler confessed that she had had a relationship with [Plaintiff]. [She] stated that the oral sex and intercourse did happen but that she had tried to say no." (all-caps

font altered)), 6 ("[Defendant] Peeler stated she performed oral sex on [Plaintiff] in the dairy cooler one time and performed oral sex and had intercourse one time in the commissary. . . . [She] continued to state that [he] 'forced' her to have intercourse. Due to his physical disability it would be very hard for him to unbutton her correctional officer uniform, pull her pants down, and perform sex if she was indeed fighting him. However, she continued to state she was afraid of him." (all-caps font altered))).[6]

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 280 F. Supp. 3d 788, 793 (M.D.N.C. 2017) (quoting Fed. R. Civ. P. 56(a)). "A dispute over a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wood v. United States, 209 F. Supp. 3d 835, 839 (M.D.N.C. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In considering a summary judgment motion, the [C]ourt must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." Bullock v. United States, 176 F. Supp. 3d 517, 523 (M.D.N.C. 2016).

---

[6] Defendant Peeler could have filed a reply "object[ing] that th[is] material . . . cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), but she chose not to do so (see Docket Entries dated Feb. 20, 2018, to present).

Plaintiff's response opposes summary judgment for Defendant Peeler on two grounds:

1) "under North Carolina law, prisoners are deemed incapable of consenting to sexual activity with prison correctional staff" (Docket Entry 73 at 3 (citing N.C. Gen. Stat. § 14-27.7, now codified at N.C. Gen. Stat. § 14-27.31)); and

2) even if Defendant Peeler could have obtained valid consent for sexual activity from Plaintiff, the record raises a "genuine issue[] of material fact" as to whether, in this instance, the "acts were consensual" (id. at 4 (citing Docket Entry 71-1 at 3); see also id. at 5 ("Plaintiff's Affidavit and supporting Exhibits clearly is [sic] in dispute with the Affidavit of Defendant Peeler." (citing Docket Entry 74, ¶¶ 64-71))).

The Court should defer consideration of Plaintiff's first argument and should deny Defendant Peeler's instant Motion based on Plaintiff's second argument, for reasons borrowed from a neighboring court's persuasive analysis of an analogous case:

> Th[e Fourth] Circuit has not yet definitively addressed whether a prisoner can legally consent to a relationship with a correctional officer. However, some out-of-circuit courts have recognized that prisoners are incapable of consenting to sexual relationships with a prison official.
>
> In any event, at this point [the Court] need not address how the Fourth Circuit would decide the consent issue regarding sexual relationships between prisoners and prison officials because [Plaintiff] denies any admission that his relationship with [Defendant Peeler] was consensual . . . . In reviewing [Defendant Peeler's instant Motion], [the Court] must consider the facts and

-10-

> draw all reasonable inferences in the light most favorable to [Plaintiff].
>
> Thus, on the facts of the case at bar and consistent with the analysis of other courts, [the Court should] conclude that [Defendant Peeler's] alleged sexual abuse of [Plaintiff] is objectively, sufficiently serious for purposes of the Eighth Amendment.
>
> . . . [Plaintiff] has alleged emotional pain from the incidents, including that he lost [nearly] 3[0] pounds, could not eat or sleep and attempted to seek psychological help. . . . As such, [the Court should] find that [Plaintiff's] allegations satisfy the first element of the [Eighth Amendment] standard.
>
> The Court also [should] conclude[] that [Plaintiff] has alleged facts on which the factfinder could determine that [Defendant Peeler] acted with a sufficiently culpable state of mind. . . . [A reasonable factfinder could decide there was no] legitimate law enforcement or penological purpose behind [her] alleged sexual [activity with Plaintiff]. Thus, the second element of the Eighth Amendment standard is satisfied . . . .

Chapman v. Willis, No. 7:12CV389, 2013 WL 2322947, at *6-8 (W.D. Va. May 28, 2013) (unpublished) (internal citations and quotation marks omitted) (emphasis added); see also Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003) ("To establish a claim under the Eighth Amendment, a prisoner must satisfy two elements. First, the deprivation alleged must be, objectively, sufficiently serious. . . . Second, a prisoner must present evidence that the prison officials had a sufficiently culpable state of mind." (internal quotation marks omitted)).[7]

---

[7] Defendant Peeler's citation to and quotation from Painter v. Blue Ridge Regional Jail Authority, No. 6:17CV34, 2017 WL 3725993 (W.D. Va. Aug. 29, 2017) (unpublished), in her brief (see Docket
(continued...)

Put another way, viewing the evidence in the light most favorable to Plaintiff and granting him the benefit of all permissible inferences, a reasonable factfinder could return a verdict in his favor on his sexual abuse claim against Defendant Peeler, because it could determine that, while employed at a

---

[7](...continued)
Entry 61 at 4-5) does not support a different result. In that case, the court granted summary judgment to a prison guard who failed to stop apparent consensual sexual activity between a prisoner and another guard, based on qualified immunity, due to the lack of Fourth Circuit and/or Supreme Court authority establishing that (under the Eighth Amendment) a prisoner could never validly consent to sexual activity with a guard. See Painter, 2017 WL 3725993, at *2-4. This Recommendation assumes that (for purposes of the Eighth Amendment) Defendant Peeler could have obtained Plaintiff's valid consent to sexual activity, but finds that a factual dispute exists as to whether she did. Moreover, Defendant Peeler's brief does not seek summary judgment based on qualified immunity, and certainly does not argue that Fourth Circuit and/or Supreme Court authority leaves open the possibility that the Eighth Amendment permits prison officials to subject prisoners to sexual activity without consent. (See Docket Entry 61 at 1-6.) To the contrary, Defendant Peeler's argument (made under the heading "The 'relationship' about which Plaintiff complains was consensual." (id. at 4)) relies on the premise "that the relationship between Plaintiff and Defendant Peeler was consensual." (Id.; see also id. at 5 ("At most, the evidence before the [C]ourt is that Plaintiff [] and Defendant Peeler engaged in . . . [a] consensual inappropriate physical relationship . . . .").) Only in the final clause of the final sentence of the argument section does Defendant Peeler's brief even mention Eighth Amendment liability for prison officials who engage prisoners in sexual activity without consent and, in doing so, simply states, "even if nonconsensual, given Defendant's [sic] Peeler's very narrow role within the facility, it is hard to image [sic] the Eight [sic] Amendment having any application." (Id. at 6.) To the extent that statement constitutes an argument, Defendant Peeler's failure to develop it relieves the Court of any further obligation; "it is not the [C]ourt's job to undertake the analysis and legal research needed to support such a perfunctory argument." Cathey v. Wake Forest Univ. Baptist Med. Ctr., 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015).

prison, she aggressively pursued a relationship and ultimately engaged in non-consensual sexual activity with Plaintiff, an ostracized, disabled prisoner subject to her supervision, who lacked any experience with normal adult relationships, who did not want and actually resisted her attention, and who suffered mental and physical harm as a result of her conduct.[8]

**IT IS THEREFORE RECOMMENDED** that Defendant Peeler's Motion for Summary Judgment (Docket Entry 60) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 16, 2018

---

[8] This conclusion arises not only from the evidence tendered by Plaintiff (outlined above), but also from the fact that, by her own admission, Defendant Peeler's conduct with Plaintiff resulted in her guilty plea to a crime that (because it did not involve a minor, a public venue, or a commercial transaction) required proof of "non-consensual or coercive sexual acts," State v. Whiteley, 172 N.C. App. 772, 779 (2005) (defining limits of crimes against nature statute in wake of Lawrence v. Texas, 539 U.S. 558 (2003)), quoted with approval, State v. Hunt, 365 N.C. 432, 440 (2012).