IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
S. SHANE SMITH,                )
                               )
          Plaintiff,           )
                               )
     v.                        )         1:16CV396
                               )
FRANK L. PERRY, et al.,        )
                               )
          Defendants.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Summary Judgment Motion (Docket Entry 90), which asks "this Court to grant summary judgment dismissing this action as to Plaintiff's adequate legal services (access to courts) claim" (id. at 1). (See Docket Entry dated Jan. 6, 2019.) For the reasons that follow, the Court should grant the instant Motion.

BACKGROUND

Plaintiff, a state prisoner proceeding pro se, commenced this action by filing a complaint under 42 U.S.C. § 1983 against more than a dozen state prison officials and employees (in both their individual and official capacities) for injunctive relief and damages. (See Docket Entry 1.)[1] The complaint does not clearly

---

[1] Plaintiff's complaint consists of a five-page form (Docket Entry 1 at 1-5), which (as to all material elements) he completed only by directing the reader to an attached, 18-page, typewritten document (id. at 6-23). This Recommendation will cite that latter
(continued...)

set forth particular claims against particular Defendants (see id., § IV, ¶¶ 1-75, but instead generally asserts numerous claims against unspecified "prison official Defendants" (id., § IV, ¶ 2), including for "not provid[ing] adequate legal services" (id., § IV, ¶ 2.a.). Defendants previously filed another Motion for Summary Judgment (Docket Entry 63); however, the brief supporting that motion did not discuss the inadequate legal services claim (see Docket Entry 64). Accordingly, the undersigned Magistrate Judge recommended that the Court "not enter summary judgment against Plaintiff on his inadequate legal services claim at th[at] point[.]" (Docket Entry 80 at 57 (emphasis in original).)

The Court (per Chief United States District Judge Thomas D. Schroeder) adopted that recommendation, but "permitted [the] refil[ing of a summary judgment] motion" addressing the inadequate legal services claim. (Docket Entry 87 at 2.) Defendants then

---

[1](...continued)
portion of the complaint by reference to its section numbers and paragraph letters/number(s) (e.g., "§ III, ¶ A" or "§ IV, ¶ 1"). Plaintiff also appended 99 pages of exhibits to his complaint. (Docket Entry 1-1.) This Recommendation will cite those exhibits by the page number assigned to them in the CM/ECF footer added at docketing. All Defendants served in this case other than Julia R. Peeler filed the instant Motion. (Compare Docket Entry 1, § III, ¶¶ A-O, with Docket Entry 90 at 1; see also Docket Entry 80 at 3 n.2 (explaining substitution of Defendant Charlotte Williams in place of "John/Jane Doe, P.R.E.A. Coordinator, NC Department of Public Safety"), 46-47 (discussing only substantive reference to "John/Jane Doe(s) Prison/Contract Employee(s)" in complaint and Plaintiff's failure to identify such Defendant(s) during discovery).) This Recommendation will refer to Defendants who filed the instant Motion collectively as "Defendants."

filed the instant Motion (Docket Entry 90), supported by a brief (Docket Entry 91). Plaintiff responded (Docket Entry 93; see also Docket Entry 93-1 (affidavit); Docket Entry 93-2 (exhibits)) and Defendants failed to file a timely reply (see Docket Entry 96).

## DISCUSSION

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 280 F. Supp. 3d 788, 793 (M.D.N.C. 2017) (quoting Fed. R. Civ. P. 56(a)). "A dispute over a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wood v. United States, 209 F. Supp. 3d 835, 839 (M.D.N.C. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In considering a summary judgment motion, the [C]ourt must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." Bullock v. United States, 176 F. Supp. 3d 517, 523 (M.D.N.C. 2016) (citing Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc)).

Plaintiff's complaint presents a claim against unspecified Defendants for "not provid[ing] adequate legal services to [him] (or other prisoners)[.]" (Docket Entry 1, § IV, ¶ 2.a.) More specifically, it alleges that:

1) "the contracted legal services provider, North Carolina Prisoner Legal Services ('NCPLS') is underfunded and cannot adequately provide the needed legal services to [Plaintiff] (or other prisoners)" (id., § IV, ¶ 2.a.i.); and

2) "when NCPLS informs [Plaintiff] (or other prisoners) that [NCPLS] cannot provide assistance, Defendants do not provide any alternative legal service or assistance" (id., § IV, ¶ 2.a.ii. (emphasis omitted)).

The complaint further states that NCPLS has declined requests by Plaintiff for assistance, including because it "did not have the funds to assist [him]" (id., § IV, ¶ 3), that unspecified "Defendants do not provide or offer [him] (or other prisoners) an alternative if NCPLS declines to help" (id., § IV, ¶ 4), and that "[b]eing without legal research materials or legal representation has caused [him] harm and [he] ha[s] suffered injury as a result" (id.; see also id., § IV, ¶ 3 (asserting that simultaneous lack of "access to a law library" and "one trained in the law" "has left [Plaintiff] very vulnerable and at a great disadvantage while trying to maneuver through the legal process")). Finally, the complaint avers that Plaintiff "made numerous attempts to resolve this issue through unsuccessful communication with prison officials, in particular, Defendants [Frank L.] Perry, [George T.] Solomon, [Richard L.] Neely, [Joseph] Valliere, [Officer Mike] Williams, and [Amy] Leonard. [Plaintiff] ultimately submitted a

[grievance], but that too was unsuccessful." (Id., § IV, ¶ 5; see also id., § IV, ¶ 6 ("incorporat[ing] that grievance and corresponding communication"); Docket Entry 1-1 at 4-7 (letter from Plaintiff to Defendant Solomon of May 17, 2013, enclosing grievance regarding instances in which NCPLS declined to assist Plaintiff and prison officials did not provide law library access).)

Based on those allegations, the complaint does not plausibly assert an inadequate legal services claim against Defendants Larry Huggins, Charlotte Williams, David Livengood, Steven W. Smith, Julia R. Peeler, Carol Hurlocker, and/or Officer Weaver (as none of the allegations pertaining to such claim even mention them).[2] Moreover, because the complaint does not describe any communications about legal services between Plaintiff and Defendants Perry, Neely, Valliere, Mike Williams, or Leonard, any inadequate legal services claim against them likewise fails as a matter of law. Only Defendant Solomon thus remains as a possible Defendant subject to Plaintiff's inadequate legal services claim.

---

[2] Nor could Plaintiff plausibly state any such claim against those Defendants, given the positions the complaint alleges they held (none of which suggest authority over prisoner legal services). (See Docket Entry 1, § III, ¶¶ D (describing Defendant Huggins as "Social Work Programs Director"), E (describing position of Defendant Doe, later identified as Defendant Charlotte Williams, as "P.R.E.A. [Prison Rape Elimination Act] Coordinator"), I (describing Defendant Livengood as "Enterprise Plant Manager"), J (describing Defendant Smith as "Food Service Manager III"), K (describing Defendant Peeler as "Food Service Manager I"), M (describing Defendant Hurlocker as "Correctional Officer"), N (describing Defendant Weaver as "Correctional Officer").)

However, even as against Defendant Solomon, Plaintiff's inadequate legal services claim fails as a matter of law, for lack of evidence of actual injury. "In *Bounds v. Smith*, 430 U.S. 817 (1977), [the United States Supreme Court] held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" Lewis v. Casey, 518 U.S. 343, 346 (1996) (internal parallel citations omitted) (quoting Bounds, 430 U.S. at 828). "The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." Id. at 350 (emphasis in original). "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Id. at 351 (quoting Bounds, 430 U.S. at 825).

Accordingly, "an inmate alleging a violation of *Bounds* must show actual injury," id. at 349, and "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense," id. at 351; rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim,"

id. Put another way, to prevail on a claim under Bounds/Lewis, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353 (internal footnote omitted); see also id. at 354-55 (holding that "injury requirement is not satisfied by just any type of frustrated legal claim," but instead demands proof of impairment of "attack[s on] sentences" or "challenge[s to] conditions of confinement"). Lastly, the Lewis Court "disclaim[ed]" any of the Bounds Court's "elaborations upon the right of access to the courts" which "suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." Id. at 354.

As Defendants have observed, "Plaintiff has not provided this Court with any evidence of [such] an actual injury." (Docket Entry 91 at 10.) In that regard, the grievance Plaintiff forwarded to Defendant Solomon (A) acknowledges that, despite a lack of law library access, Plaintiff successfully instituted actions in four of the five listed instances when the NCPLS declined to assist him, and (B) does not state why he failed to institute an action in the remaining instance. (See Docket Entry 1-1 at 5-6.) Plaintiff's response to the instant Motion nonetheless insists that he "has been frustrated and impeded from filing non-frivolous documents with the courts." (Docket Entry 93 at 4 (citing Docket Entry 93-1).) However, the affidavit cited by Plaintiff to support that assertion does not set forth evidence "demonstrat[ing] that the

-7-

alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," Lewis, 518 U.S. at 351. (See Docket Entry 93-1 at 1-5.)[3]

## CONCLUSION

Plaintiff has not come forward with evidence of actual injury attributable to inadequate legal services provided by Defendants.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 90) be granted, in that the Court should enter summary judgment against Plaintiff on his inadequate legal services claim.

                                            /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                              **United States Magistrate Judge**

May 1, 2019

---

[3] To the contrary, that affidavit shows that the only two specific litigation efforts identified by Plaintiff ended due to circumstances unrelated to lack of access to a law library or legal assistance program. (See Docket Entry 93-1 at 3 ("In late 2015, I attempted to submit to the North Carolina Court of Appeals a non-frivolous appeal. The North Carolina Court of Appeals would not permit me to proceed solely because I was unable to provide the necessary copies of the documents."), 4 ("As a result of my clearly marked, clearly addressed, legal mail being delivered to another prisoner and never reaching me, I was unable to timely file the necessary documents to continue [appellate review of a federal] civil action."); see also Docket Entry 93-2 at 11-12 (documenting that North Carolina Court of Appeals dismissed appeal referenced in Plaintiff's affidavit because of his "fail[ure] to file with th[at c]ourt a transcript of the trial from which his appeal ar[o]se[]," which made it "impossible for [that court] to assess the evidentiary basis for the trial court's findings or conclusions," as well as determination by North Carolina Court of Appeals that "the trial court properly denied [P]laintiff's request [for a free copy of the trial transcript]" and that he was "not excused from the requirement to include a transcript of the record"), 13 ("Because [P]laintiff did not contract with the court reporter to have the proceedings transcribed, no transcript was produced.").)