# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

S. SHANE SMITH,                    )
                                   )
            Plaintiff,             )
                                   )
        v.                         )        1:16CV396
                                   )
FRANK L. PERRY, et al.,            )
                                   )
            Defendants.            )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Following the entry by the undersigned United States Magistrate Judge of a Recommendation (Docket Entry 97), as to Defendants' Summary Judgment Motion (Docket Entry 90), the Court (per Chief United States District Judge Thomas D. Schroeder) entered an Order "recommitt[ing the matter] to the [undersigned] Magistrate Judge for further consideration, for the limited purpose set forth [t]herein." (Docket Entry 102 ("Recommitment Order") at 8.) After such further consideration, the undersigned Magistrate Judge again recommends that the Court grant Defendants' Summary Judgment Motion and enter summary judgment against Plaintiff on the claim(s) referenced in the Recommitment Order.

Plaintiff, a state prisoner proceeding pro se, commenced this action by filing a Complaint under 42 U.S.C. § 1983 against various state prison officials and employees. (See Docket Entry 1.)[1]

_____

[1] The Complaint consists of a five-page form (Docket Entry 1 at 1-5), which generally directs the reader to an attached, 18-page, typewritten document (id. at 6-23). This Recommendation (continued...)

Plaintiff signed the Complaint on September 8, 2015. (Id. at 5; accord id., § V.) The Complaint does not set forth particular claims against particular Defendants (see id., § IV, ¶¶ 1-75, but instead generally asserts numerous claims against "prison official Defendants" (id., § IV, ¶ 2), including (as relevant here) for "not provid[ing] adequate legal services" (id., § IV, ¶ 2.a. (emphasis added)). As to that claim, the Complaint alleges that:

1) "the contracted legal services provider, North Carolina Prisoner Legal Services ('NCPLS')[,] is underfunded and cannot adequately provide the needed legal services to [Plaintiff] (or other prisoners)" (id., § IV, ¶ 2.a.i. (emphasis added)); and

2) "when NCPLS informs [Plaintiff] (or other prisoners) that [NCPLS] cannot provide assistance, Defendants do not provide any alternative legal service or assistance" (id., § IV, ¶ 2.a.ii. (emphasis omitted and added)).

The Complaint further states that NCPLS has declined requests by Plaintiff "seeking legal assistance" (id., § IV, ¶ 3 (emphasis added)), including because it "did not have the funds to assist [him]" (id.), that "Defendants do not provide or offer [him] (nor other prisoners) an alternative if NCPLS declines to help" (id.,

---

[1](...continued)
cites that latter portion of the Complaint by reference to its section numbers and paragraph letters/numbers (e.g., "§ III, ¶ A" or "§ IV, ¶ 1"). Plaintiff also appended 99 pages of exhibits to his Complaint. (Docket Entry 1-1.) This Recommendation cites those exhibits (and attachments to other filings) by the page number in the footer added upon docketing in the CM/ECF system.

-2-

§ IV, ¶ 4), and that "[b]eing without <u>legal</u> research materials or <u>legal</u> representation has caused [him] harm and [he] ha[s] suffered injury as a result" (<u>id.</u> (emphasis added); <u>see also</u> <u>id.</u>, § IV, ¶ 3 (asserting that simultaneous lack of "access to a <u>law</u> library" and "one trained in the <u>law</u>" "has left [Plaintiff] very vulnerable and at a great disadvantage while trying to maneuver through the legal process" (emphasis added))). Finally, the Complaint avers that Plaintiff "made numerous attempts to resolve this issue through unsuccessful communication with prison officials, in particular, Defendants [Frank L.] Perry, [George T.] Solomon, [Richard L.] Neely, [Joseph] Valliere, [Officer Mike] Williams, and [Amy] Leonard. [Plaintiff] ultimately submitted a [grievance], but that too was unsuccessful." (<u>Id.</u>, § IV, ¶ 5.) The Complaint "incorporate[s] that grievance and corresponding communication . . . as Attachment 01." (<u>Id.</u>, § IV, ¶ 6; <u>see also</u> <u>id.</u>, § II (describing "Attachment 01" as containing "copies of grievances" "Re: Access to <u>law</u> library, <u>legal</u> materials, and/or persons trained in the <u>law</u>" (emphasis added)); Docket Entry 1-1 at 4-7 (including, within "Attachment 01," Plaintiff's letter to Defendant Solomon dated May 17, 2013, enclosing grievance regarding five instances in which NCPLS declined to assist Plaintiff and prison officials did not provide law library access).)

Neither the Complaint nor any attachment thereto alleges any failure by Defendants to provide <u>clerical</u> assistance, such as

photocopying, in violation of Plaintiff's federal constitutional right of access to courts. (See Docket Entry 1; Docket Entry 1-1.) On February 24, 2017, the Court (per the undersigned Magistrate Judge) adopted a Scheduling Order that required (A) "the parties [to] file any motion seeking leave to amend pleadings and/or to add parties by 04/28/2017" (Text Order dated Feb. 24, 2017), and (B) "the parties [to] complete discovery by 08/28/2017" (id.; see also Text Order dated Sept. 26, 2017 (denying Plaintiff's untimely motion to extend discovery)). Long after those deadlines had passed, Plaintiff first mentioned photocopying in a Request for Photocopying Assistance (dated as signed on November 15, 2017, at "Dan River Work Farm") "plead[ing] this Court for an Order that prison officials provide him with photocopying assistance so that he may make the necessary photocopies of documents and exhibits he intends to submit to the Court and to the two different sets of Defendants in this action." (Docket Entry 66 at 1 (emphasis added).) Plaintiff's affidavit supporting the Request for Photocopying Assistance states (in pertinent part):

1) "on approximately December 16, 2013, [Plaintiff] submitted a request to the Rowan [County] Superior Court . . . for photocopying assistance" (Docket Entry 68 at 2; see also Docket Entry 68-1 at 2 ("Request for Photocopying Assistance" dated December 16, 2013, "requesting [Rowan County Superior] Court for an [o]rder that prison officials provide [Plaintiff] with access to

-4-

photocopying services so that [he] c[ould] provide the [Rowan County Superior] Court and the [d]efendants with copies of exhibits he intends to introduce in th[e] action [of Smith v. Young, No. 12CVS2810 (Rowan Cty. Super. Ct.)]"));

2) the Rowan County Superior Court "subsequently granted the request" (Docket Entry 68 at 2; see also Docket Entry 68-1 at 2 (reflecting, at bottom of "Request for Photocopying Assistance," handwritten notation of "So ordered this the 16 day of December 2013" followed by signature of Superior Court Judge));

3) "[a]t that time, [Plaintiff] was housed at . . . Piedmont Correctional Institution ('PCI') . . . [where] his legal documents were copied without incident" (Docket Entry 68 at 2);

4) "[o]n approximately June 18, 2015, [Plaintiff] transferred from PCI to . . . Warren Correctional Institution ('WCI')" (id.);

5) "[o]n approximately January 5, 2016, [Plaintiff] appeared in the Warren County Superior Court," which "granted [his] request for photocopying assistance" (id.; see also Docket Entry 68-1 at 5 ("[P]laintiff's request for photocopying assistance from the N.C. Department of Public Safety is allowed; to be completed prior to the February 15, 2016, hearing date [in Smith v. North Carolina Dep't of Pub. Safety, No. 15CVS274 (Warren Cty. Super. Ct.)]."));

6) "[u]pon [Plaintiff's] return to WCI, [his] legal documents were copied without incident" (Docket Entry 68 at 2);

-5-

7) "[o]n approximately August 22, 2016, [Plaintiff] was promoted and transferred from WCI to Dan River" (id.);

8) "[s]hortly after [his] arrival at Dan River, [Plaintiff] requested photocopying assistance for some legal documents and the facility assistant superintendent, Michael Roach, tersely informed [Plaintiff], 'We don't do photocopies, Dude!'" (id.);

9) after Plaintiff "submitted an updated proposed [o]rder which included Dan River in the request," the Warren County Superior Court "again granted the request" (id. at 3; see also Docket Entry 68-1 at 6 (reciting, at bottom of "Plaintiff's Request for Photocopying Assistance," under heading "Order" and above signature of Superior Court Judge: "So ordered, this the 25th day of January 2017" (all-caps font omitted)));

10) "[i]n approximately February, 2017, Mr. Roach informed [Plaintiff], order or no order, [Mr. Roach] was not making copies for [Plaintiff]" (Docket Entry 68 at 3);

11) "[o]n approximately May 26, 2017, prison officials and [Plaintiff] appeared [in Warren County Superior Court]," at which time "[p]rison officials presented to the [c]ourt that prison officials absolutely did not make photocopies for prisoners under any circumstances and proclaimed that to do so would totally disrupt the daily operations of the prison" (id.);

12) "[i]n approximately June 2017, [the Warren County Superior Court] rescinded [the o]rder directing prison officials to assist [Plaintiff] with photocopying [his] legal documents" (id.);

13) "[o]n approximately August 28, 2017, [Plaintiff] received a letter and [o]rder from the North Carolina Industrial Commission commanding that if [he] had documents [he] wished to present, [he] must have facility prison officials . . . assist [him] with photocopying the[ documents]" (id.); and

14) "Dan River facility officials complied with th[at o]rder . . . and made the requested copies" (id.).

The Court (per the undersigned Magistrate Judge) "den[ied] without prejudice [Plaintiff's] Request for Photocopying Assistance . . . ." (Text Order dated Nov. 20, 2017.) The Text Order denying the Request for Photocopying Assistance notes that Plaintiff sought "an order from this Court directing unnamed state prison officials to provide him with free photocopying" (id. (emphasis added)), without clarifying whether the Request for Photocopying Assistance sought "relief from any Defendants in this case" (id.). Moreover, the Text Order explained that, "[t]o the extent Plaintiff s[ought] relief from any party, the relief requested would appear to lie outside the realm of the Section 1983 claims asserted in this case" (id.), as well as that, "to the extent Plaintiff wishe[d] to assert a new due process claim under Section 1983 based on denial of photocopies, he likely could not assert such a claim in this case,

–7–

given that discovery ha[d] closed" (id.). Plaintiff did not appeal that Text Order or file a belated motion to amend his Complaint to add a claim for denial of photocopying in violation of his federal constitutional right of access to courts. (See Docket Entries dated Nov. 20, 2017, to present.)[2]

Also after the close of discovery, Defendants filed a Motion for Summary Judgment (Docket Entry 63);[3] however, the brief supporting that motion did not discuss Plaintiff's inadequate legal services claim (see Docket Entry 64). Accordingly, the undersigned Magistrate Judge recommended that the Court "not enter summary judgment against Plaintiff on his inadequate legal services claim at th[at] point[.]" (Docket Entry 80 at 57 (emphasis omitted).)

___

[2] Plaintiff did submit a letter (dated December 7, 2017, and mailed from Dan River Work Farm) asking the Court to relax the requirement that he serve adverse parties with a copy of his summary judgment-related filings, because unidentified "prison officials absolutely positively stand on their head refusing to make any such copies" (Docket Entry 69 at 1) and the Court found an accommodation for him (see Text Order dated Dec. 19, 2017).

[3] All Defendants served in this case other than Julia R. Peeler filed the above-cited Motion for Summary Judgment. (Compare Docket Entry 1, § III, ¶¶ A-O, with Docket Entry 63 at 1; see also Docket Entry 80 at 3 n.2 (explaining substitution of Defendant Charlotte Williams for "John/Jane Doe, P.R.E.A. Coordinator, NC Department of Public Safety"), 46-47 (discussing only substantive reference to "John/Jane Doe(s) Prison/Contract Employee(s)" in Complaint and Plaintiff's failure to identify such Defendant(s) in discovery).) Defendant Peeler filed a separate summary judgment motion (Docket Entry 60) and, "[i]n opposing summary judgment for Defendant Peeler, Plaintiff did not argue that he had asserted claims against her other than for sexual abuse" (Docket Entry 77 at 5 n.4; see also Docket Entry 84 (adopting Docket Entry 77)). This Recommendation uses the collective reference "Defendants" even as to filings Defendant Peeler did not join.

-8-

The Court (per Chief Judge Schroeder) adopted that recommendation, but "permitted [the] refil[ing of a summary judgment] motion" addressing the "inadequate <u>legal</u> services claim." (Docket Entry 87 at 2 (emphasis added).) Defendants then filed the instant Summary Judgment Motion (Docket Entry 90), again supported by a brief (Docket Entry 91). The instant Summary Judgment Motion asks "this Court to grant summary judgment dismissing this action as to Plaintiff's adequate <u>legal</u> services (access to courts) claim." (Docket Entry 90 at 1 (emphasis added).) Defendants' supporting brief argues that "Plaintiff cannot provide sufficient evidence to show he actually suffered an adverse legal consequence resulting from Defendants' alleged failure to adequately provide him <u>legal</u> services." (Docket Entry 91 at 11 (emphasis added).)

Plaintiff responded (Docket Entry 93), including by submitting an affidavit (Docket Entry 93-1) and exhibits (Docket Entry 93-2). In so doing, Plaintiff described the claim at issue as "Defendants do not provide adequate access to the courts <u>in that</u> the contracted <u>legal</u> services provider, NCPLS, is underfunded and cannot adequately provide the needed <u>legal</u> services . . . and Defendants provide no alternative <u>legal</u> services or assistance . . . ." (Docket Entry 93 at 2 (emphasis added).) Plaintiff further argued that he "ha[d] been frustrated and impeded from filing non-frivolous documents with the courts. Plaintiff . . . does not have access to a <u>law</u> library, nor does he have access to persons trained

-9-

in the _law_." (_Id._ at 4 (emphasis added) (internal citation omitted) (citing Docket Entry 93-1).) In his affidavit, Plaintiff averred (in pertinent part):

1) Plaintiff "do[es] not have access to a _law_ library" (Docket Entry 93-1 at 1 (emphasis added));

2) "there are no prison _law_ libraries located within the [North Carolina prison system]" (_id._ (emphasis added));

3) North Carolina "does not provide [Plaintiff] (or any other prisoner) _legal_ research materials" (_id._ (emphasis added));

4) Plaintiff "do[es] not have access to persons trained in the _law_ to assist [him] with [his] _legal_ questions, _legal_ research, or _legal_ pleadings" (_id._ (emphasis added));

5) North Carolina "d[oes] not provide _law_ libraries to its prisoners, but instead contract[s] with a _legal_ services provider" (_id._ (emphasis added); _see also_ _id._ ("[L]aw_ libraries were discontinued in 1988, and in lieu of the _law_ libraries, _legal_ services . . . [are] provided by [NCPLS]." (emphasis added)));

6) Plaintiff "ha[s] written numerous letters to NCPLS requesting _legal_ assistance, but NCPLS responded informing [Plaintiff] their budged [sic] had been severely cut and they were no longer providing _legal_ services to prisoners (such as [Plaintiff]) in civil matters, and were assisting prisoners only in very limited criminal matters" (_id._ at 1-2 (emphasis added));

-10-

7) Plaintiff "ha[s] written numerous requests to prison officials, including but not limited to [Defendants] Perry, [] Solomon, [] Neely, [] Valliere, Mike Williams, and [] Leonard, regarding the lack of <u>law</u> libraries and/or someone trained in the <u>law</u> to assist [Plaintiff], but no one . . . provided or suggested a viable alternative" (<u>id.</u> at 2 (emphasis added));

8) Plaintiff "submitted a grievance to prison officials regarding [his] lack of access to a <u>law</u> library or to persons trained in the <u>law</u>, but prison officials ignored [his] grievance" (<u>id.</u> (emphasis added));

9) "[p]reviously, prisoners could write to the North Carolina Supreme Court Library and request photocopies of <u>legal authorities on a cost per page basis</u>" (<u>id.</u> (emphasis added));

10) "[t]he North Carolina Supreme Court Library no longer provides photocopying service of <u>legal authorities</u> to prisoners" (<u>id.</u> (emphasis added));

11) "[p]<u>rison officials will not make photocopies of legal documents for [Plaintiff]</u>" (<u>id.</u> (emphasis added));[4]

12) Plaintiff "previously requested, and <u>was granted, orders from the North Carolina Superior Courts directing prison officials to provide photocopying assistance with legal documents</u>" (<u>id.</u> (citing Docket Entry 68) (emphasis added));

---

[4] Plaintiff's above-cited affidavit did not assert that any Defendant in this action refused to make photocopies of legal documents for Plaintiff. (<u>See</u> Docket Entry 93-1 at 1-5.)

-11-

13) "[o]n approximately May 19, 2015, the North Carolina Court of Appeals completely rejected a non-frivolous appeal [Plaintiff] had submitted because [he] was unable to provide the necessary copies, and because [he] was unable to cite legal authorities" (id. at 2-3 (citing Docket Entry 93-2 at 7-14));[5]

14) "in late 2015," in another case, "[t]he North Carolina Court of Appeals would not permit [Plaintiff] to proceed solely because [he] was unable to provide the necessary copies of the documents" (id. at 3);[6]

15) "[a]s a result of [Plaintiff's] clearly marked, clearly addressed, legal mail being delivered to another prisoner [in late 2014 or early 2015], [Plaintiff] was unable to timely file the necessary documents to continue [an appeal as to which the United States Court of Appeals for the Fourth Circuit had issued an adverse ruling]" (id. at 4); and

16) "no matter which of the State's facilities [Plaintiff] may transfer to, [he] will remain without access to a law library[ and]

---

[5] In fact, in the above-cited decision, the court did not dismiss Plaintiff's appeal for failure "to provide the necessary copies" of his legal documents (Docket Entry 93-1 at 2), but rather for "fail[ure] to supply . . . a transcript of witness testimony" (Docket Entry 93-2 at 11; see also id. at 12 ("[T]he trial court properly denied [P]laintiff's request [for a free copy of the transcript]. . . . [A]n indigent civil litigant seeking appellate review who is not entitled to court-appointed counsel also is not entitled to obtain a transcript at no charge and is not excused from the requirement to include a transcript in the record.")).

[6] Plaintiff did not cite or attach a copy of said decision. (See Docket Entry 93-1 at 3; Docket Entry 93-2 at 1-14.)

<u>legal</u> reference materials, and will not be provided access to persons trained in the <u>law</u> to assist [him]" (<u>id.</u> (emphasis added)).

After Defendants failed to file a timely reply (<u>see</u> Docket Entry 96), the undersigned Magistrate Judge addressed "Defendants' Summary Judgment Motion (Docket Entry 90), which asks 'this Court to grant summary judgment dismissing this action as to Plaintiff's adequate <u>legal</u> services (access to courts) claim' (<u>id.</u> at 1)" (Docket Entry 97 ("Prior Recommendation") at 1 (emphasis added); <u>see also</u> <u>id.</u> at 3 ("Plaintiff's [C]omplaint presents a claim against unspecified Defendants for 'not providing adequate <u>legal</u> services to him (or other prisoners).'" (emphasis added) (internal brackets omitted) (quoting Docket Entry 1, § IV, ¶ 2.a.))). The Prior Recommendation concludes as follows:

> [T]he [C]omplaint does not plausibly assert an inadequate legal services claim against Defendants Larry Huggins, Charlotte Williams, David Livengood, Steven W. Smith, Julia R. Peeler, Carol Hurlocker, and/or Officer Weaver (as none of the allegations pertaining to such claim even mention them). Moreover, because the [C]omplaint does not describe any communications about legal services between Plaintiff and Defendants Perry, Neely, Valliere, Mike Williams, or Leonard, any inadequate legal services claim against them likewise fails as a matter of law. Only Defendant Solomon thus remains as a possible Defendant subject to Plaintiff's inadequate legal services claim.
>
> However, even as against Defendant Solomon, Plaintiff's inadequate legal services claim fails as a matter of law, for lack of evidence of actual injury. "In *Bounds v. Smith*, 430 U.S. 817 (1977), the United States Supreme Court held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

-13-

prisoners with adequate law libraries or adequate
assistance from persons trained in the law.'" Lewis v.
Casey, 518 U.S. 343, 346 (1996) (internal parallel
citations omitted) (quoting Bounds, 430 U.S. at 828).
"The right that *Bounds* acknowledged was the (already
well-established) right of access to the courts." Id. at
350 (emphasis in original). "In other words, prison law
libraries and legal assistance programs are not ends in
themselves, but only the means for ensuring 'a reasonably
adequate opportunity to present claimed violations of
fundamental constitutional rights to the courts.'" Id.
at 351 (quoting Bounds, 430 U.S. at 825).

    Accordingly, "an inmate alleging a violation of
*Bounds* must show actual injury," id. at 349, and "cannot
establish relevant actual injury simply by establishing
that his prison's law library or legal assistance program
is subpar in some theoretical sense," id. at 351; rather,
the inmate "must go one step further and demonstrate that
the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a legal
claim," id. Put another way, to prevail on a claim under
Bounds/Lewis, an inmate must "demonstrate that a
nonfrivolous legal claim had been frustrated or was being
impeded." Id. at 353 (internal footnote omitted); see
also id. at 354-55 (holding that "injury requirement is
not satisfied by just any type of frustrated legal
claim," but instead demands proof of impairment of
"attacks on sentences" or "challenges to conditions of
confinement"). Lastly, the Lewis Court "disclaimed" any
of the Bounds Court's "elaborations upon the right of
access to the courts" which "suggest that the State must
enable the prisoner to discover grievances, and to
litigate effectively once in court." Id. at 354.

    As Defendants have observed, "Plaintiff has not
provided this Court with any evidence of such an actual
injury." (Docket Entry 91 at 10.) In that regard, the
grievance Plaintiff forwarded to Defendant Solomon
(A) acknowledges that, despite a lack of law library
access, Plaintiff successfully instituted actions in four
of the five listed instances when the NCPLS declined to
assist him, and (B) does not state why he failed to
institute an action in the remaining instance. (See
Docket Entry 1-1 at 5-6.) Plaintiff's response to
[Defendants' Summary Judgment] Motion nonetheless insists
that he "has been frustrated and impeded from filing
non-frivolous documents with the courts." (Docket Entry

-14-

93 at 4 (citing Docket Entry 93-1).) However, the
affidavit cited by Plaintiff to support that assertion
does not set forth evidence "demonstrating that the
alleged shortcomings in the library or legal assistance
program hindered his efforts to pursue a legal claim,"
Lewis, 518 U.S. at 351. (See Docket Entry 93-1 at 1-5.)

(Docket Entry 97 at 5-8 (internal brackets and footnote omitted);
see also id. at 8 n.3 ("[The] litigation efforts identified by
Plaintiff [in his affidavit opposing Defendants' Summary Judgment
Motion] ended due to circumstances unrelated to lack of access to
a law library or legal assistance program." (citing Docket Entry
93-1 at 3-4 and Docket Entry 93-2 at 11-13, which showed that
(A) Plaintiff's affidavit attributed denial of state appeal to lack
of "necessary copies" and termination of federal appeal to
misdirection of legal mail, and (B) adverse state appellate ruling
focused primarily on lack of trial transcript, respectively)).)

Based on those conclusions, the Prior Recommendation proposes
"that [Defendants' Summary Judgment] Motion (Docket Entry 90) be
granted, in that the Court should enter summary judgment against
Plaintiff on his inadequate legal services claim." (Docket Entry
97 at 8 (emphasis added).) Plaintiff objected to the Prior
Recommendation. (Docket Entry 101 ("Objections"); see also Docket
Entry 101-1 (listing five "exhibits [Plaintiff] has referenced" in
Objections, which appear as Docket Entries 101-2 ("Exhibit 1"),
101-3 ("Exhibit 2"), 101-4 ("Exhibit 3"), 101-5 ("Exhibit 4"), and
101-6 ("Exhibit 5")).) The Objections frame the claim at issue as
"Defendants do not provide adequate access to the courts in that

-15-

the contracted <u>legal</u> services provider, NCPLS, is not appropriately funded . . . and cannot provide the needed <u>legal</u> services . . . and Defendants provide no alternative <u>legal</u> services or assistance . . . ." (Docket Entry 101 at 1 (emphasis added).) After reviewing the procedural history (<u>see</u> <u>id.</u> at 1-3), the Objections challenge the Prior Recommendation under five separate headings:

1) "Access to Law Libraries and/or Persons Trained in the Law" (<u>id.</u> at 3 (bold font omitted); <u>see also</u> <u>id.</u> at 4 ("With the inadequate funding from Defendants, NCPLS is no longer providing legal services to North Carolina prisoners, such as Plaintiff. . . . Defendants offered no alternative. Plaintiff was not provided a law library or legal reference materials, and he was not provided assistance from persons trained in the law."));

2) "Actual Injury" (<u>id.</u> at 4 (bold font omitted); <u>see also</u> <u>id.</u> at 4-5 (citing Exhibits 2, 3, 4, and 5 to show "Plaintiff has been frustrated and/or impeded in [appealing three state] actions"));

3) "Photocopying Assistance" (<u>id.</u> at 5 (bold font omitted); <u>see also</u> <u>id.</u> (discussing matters raised in Docket Entry 68 and/or attachments located at Docket Entry 68-1 and arguing that "Plaintiff has had three negative rulings from the [N]orth Carolina Court of Appeals for not providing the necessary copies"));

4) "Plaintiff's Requests for Legal Assistance to Defendants" (<u>id.</u> (bold font omitted); <u>see also</u> <u>id.</u> (contending that "Plaintiff's case notes, which were logged and maintained by

-16-

Defendant Leonard" and appear as Docket Entry 64-2, "referenced [his] complaint and grievances to her regarding prison officials not providing the appropriate legal assistance"));[7] and

5) "Legal Supplies" (id. (bold font omitted); see also id. at 5-6 ("Defendants are to provide supplies necessary for prisoners . . . to prepare and submit legal documents and communicate with the courts and attorneys. . . . Plaintiff has complained that th[e provided word processor] is not compatible with his disability, and prison officials do not properly maintain the supplies for [it]

---

[7] In fact, Defendant Leonard's notes do not reflect that Plaintiff ever presented a "complaint [or] grievances to her regarding prison officials not providing the appropriate legal assistance" (Docket Entry 101 at 5); instead, those notes show the following sequence of communications by Plaintiff pertinent to legal assistance issues: (1) on January 19, 2012, Plaintiff "wrote requesting the facility coordinator for the attorney assistance program," Defendant Leonard responded "that all staff are familiar with the program and can provide the contact information," and Defendant Leonard "gave [Plaintiff] the address and further advised him that he could get the carbon paper from the back lobby" (Docket Entry 64-2 at 21-22 (standard capitalization applied)); (2) on March 21, 2012, Plaintiff "stated that he had some problems with [NCPLS] dealing with some court issues but he had contact with them and he hope[d] things will get cleared up soon" (id. at 21); (3) on July 27, 2012, Plaintiff "completed a mediation telephone call with his attorney present," "stated that he was doing well," "stated that he had some issues with his settlement but he did not elaborate on the concerns," "stated that he wished to speak with [Defendant] Neely about these [concerns]," and "this will take place at a later date" (id.); (4) on February 13, 2013, Plaintiff "stated that he was going to file a grievance against [NCPLS] because he is having to pay a lawyer to do the work that [NCPLS] should be doing for him but [NCPLS] will not" (id. at 19; see also id. ("[Plaintiff] stated that he was going to sue [NCPLS] for his money back from paying the lawyer.")); and (5) on June 21, 2013, Plaintiff "had some issues and concerns he expressed about [NCPLS]" and "stated that he had sent a confidential grievance to [Defendant Solomon's] office but has not had any reply as of yet" (id. at 18).

-17-

. . . . [T]his is merely another strong, supporting example of
Defendants impeding, frustrating, and downright obstructing
Plaintiff's access to courts.")).

Chief Judge Schroeder thereafter issued the Recommitment Order
"appropriately review[ing] the portions of the [Prior
Recommendation] to which proper objection was made and [making] a
de novo determination" (Docket Entry 102 at 7), as follows:

> The review is in accord with the [Prior Recommendation],
> <u>except as to the denial of access to the courts claim to
> the extent that Plaintiff argues he has been denied
> access to photocopies and such [denial of] access
> resulted in actual harm in the form of the dismissal of
> his two appeals noted in Exhibits 3 and 5</u>.  In light of
> the case law providing that a denial of access to courts
> claim could arise from <u>a defendant who fails to permit a
> plaintiff from making required photocopies</u>, the fact that
> the Magistrate Judge reviewed the [C]omplaint pursuant to
> his authority under 28 U.S.C. § 1915(A), and the fact
> that the Magistrate Judge expressly identified that
> Plaintiff's affidavit showed that some of his litigation
> efforts ended due to his inability to provide
> photocopies, the [C]ourt will recommit the matter to the
> Magistrate Judge for further consideration pursuant to 28
> U.S.C. § 636(b)(1).

(<u>Id.</u> at 7-8 (emphasis added); <u>see also</u> <u>id.</u> at 3 ("Plaintiff's first
objection is titled 'Access to Law Libraries and/or Persons Trained
in the Law', and it lacks merit for the reasons provided in the
[Prior] Recommendation." (internal citation omitted)), 7 ("As to
Plaintiff's [fifth] objection that he has to use a word processor
for his 'writing needs' and that prison officials do not properly
maintain the supplies for the machine, Plaintiff has failed to show
actual injury.  He has not shown that the word processor conditions

-18-

have either rendered him unable to file or that a complaint or appeal was so technically deficient that it was dismissed without consideration of the merits." (internal citation omitted)).)

As concerns Exhibits 3 and 5 submitted with Plaintiff's Objections, the Recommitment Order states:

> Exhibit 3 is an order dated June 19, 2018, from the Clerk for the North Carolina Court of Appeals in case number P17-132 dismissing Plaintiff's petition "due to failure to attach supporting documents" and denying his "Request for Suspension of Rules." Exhibit 4 is Plaintiff's Request for Suspension of Rules in case number 18-1047, dated as submitted on December 14, 2018, asking the court to relieve him of the responsibility of providing copies of certain documents because he "does not have access to photocopying service" . . . . Exhibit 5 is an order dated December 21, 2018, from the Clerk for the North Carolina Court of Appeals denying the Exhibit 4 request.
>
> . . . [T]he [Prior] Recommendation found that Plaintiff has not provided the Court with any evidence of an actual injury, and that his affidavit does not set forth evidence "demonstrating that the alleged shortcomings in the library or legal assistance program hindered his efforts to purse a legal claim." The [Prior] Recommendation then noted that Plaintiff's affidavit "shows that the only two specific litigation efforts identified by Plaintiff ended due to circumstances unrelated to lack of access to a law library or legal assistance program," and that the affidavit stated the North Carolina Court of Appeals would not permit Plaintiff to proceed "solely because he was unable to provide the necessary copies of the documents." But failure to provide the necessary copies of documents can, in certain situations, give rise to a denial of a right of access claim.
>
> . . . [A]n inmate can make out a claim under § 1983 based on denial of copying privileges if he shows that the denial prevented him from exercising his constitutional right of access to courts. . . . [I]n order to state a constitutional claim of denial of access to the courts a plaintiff must allege specific injury

-19-

resulting from the alleged denial. The right of access to the courts is intended to permit inmates to litigate post-conviction legal issues . . . . Where an inmate has had access to court, but claims that officials denied him some item necessary for meaningful pursuit of his litigation, the inmate must allege facts showing that denial of the item hindered his efforts to pursue a legal claim and must show either that he was unable to file or his filing was so technically deficient that it was dismissed without consideration of the merits.

Given that Plaintiff's appeals in Exhibits 3 and 5 were denied for failure to provide the requisite copies, the Magistrate Judge should specifically address whether Plaintiff has shown that **[D]efendants'** refusal to copy his legal work prejudiced him in pending litigation, or actually impeded his access to the courts.

(Id. at 4-7 (internal brackets, citations, ellipsis, and some quotation marks omitted) (emphasis added).)

The undersigned Magistrate Judge respectfully reports that, in addressing Defendants' Summary Judgment Motion, the Prior Recommendation did not discuss whether "Plaintiff ha[d] shown that [D]efendants' refusal to copy his legal work prejudiced him in pending litigation, or actually impeded his access to the courts" (id. at 6-7 (internal brackets, ellipsis, and quotation marks omitted)), because (as documented above) (A) the Complaint does not assert a claim for denial of access to courts due to Defendants' failure to photocopy Plaintiff's legal work, and (consequently) (B) Defendants' Summary Judgment Motion does not move for summary judgment on any such claim. Rather, as relevant here, the Complaint asserts a claim for denial of access to courts for "not provid[ing] adequate legal services" (Docket Entry 1, § IV, ¶ 2.a.

-20-

(emphasis added)) and – consistent with Chief Judge Schroeder's order "permitt[ing the] refil[ing of a summary judgment] motion" (Docket Entry 87 at 2) as to the "inadequate _legal_ services claim" (_id._ (emphasis added)) – Defendants' Summary Judgment Motion asks "this Court to grant summary judgment dismissing this action as to Plaintiff's adequate _legal_ services (access to courts) claim" (Docket Entry 90 at 1 (emphasis added)). Indeed, even Plaintiff's response to Defendants' Summary Judgment Motion articulates the claim at issue therein as "Defendants do not provide adequate access to the courts _in that_ the contracted _legal_ services provider, NCPLS, is underfunded and cannot adequately provide the needed _legal_ services . . . and Defendants provide no alternative _legal_ services or assistance . . . ." (Docket Entry 93 at 2 (emphasis added); _see also id._ at 4 (arguing that Plaintiff "ha[d] been frustrated and impeded from filing non-frivolous documents with the courts," because he "does not have access to a law library, nor does he have access to persons trained in the law").)

Moreover, when Plaintiff first mentioned photocopying of legal documents – only after the close of discovery and only for the purpose of securing an order requiring photocopying of documents for use "in this action" (Docket Entry 66 at 1) – the undersigned Magistrate Judge noted (A) that Plaintiff had not clearly demanded "relief from any Defendants in this case" (Text Order dated Nov. 20, 2017), (B) that, "[t]o the extent Plaintiff s[ought] relief

-21-

from any party, the relief requested would appear to lie outside the realm of the Section 1983 claims asserted in this case" (id.), and (C) that, "to the extent Plaintiff wishe[d] to assert a new due process claim under Section 1983 based on denial of photocopies, he likely could not assert such a claim in this case, given that discovery ha[d] closed" (id.). Plaintiff thereafter raised the subject of photocopying in his affidavit opposing Defendants' Summary Judgment Motion, but even then Plaintiff did not aver that Defendants in this action ever denied him photocopies of legal documents (see Docket Entry 93-1 at 1-5); instead, Plaintiff stated only that unidentified "[p]rison officials will not make photocopies of legal documents for [him]" (id. at 2; see also id. at 2-3 (referencing two occasions, "[o]n approximately May 19, 2015," and "[i]n late 2015," when state appellate court purportedly rejected Plaintiff's appeals for lack of copies of his filings)).[8]

Further, even if Plaintiff's affidavit opposing Defendants' Summary Judgment Motion had alleged that they failed to photocopy his legal documents, "[o]rdinarily, a response to a motion for summary judgment is not the proper vehicle to raise new claims and, when a [litigant] has not moved to amend his [pleading], the Court

---

[8] The Recommitment Order explains that the "opinion dated May 19, 2015 by the North Carolina Court of Appeals" actually rejected Plaintiff's appeal, not due to a lack of copies of his legal filings, but due to "his failure to include citation to any legal authority in his brief and his failure to file a transcript of the trial from which his appeal arose." (Docket Entry 102 at 3.)

-22-

will not consider any allegations or arguments stemming from [a] new claim," <u>White v. Keller</u>, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (Schroeder, J.) (collecting cases) (internal brackets and quotation marks omitted). Put another way, this "lawsuit[ is] not a constantly moving target with new claims . . . to be added whenever [] Plaintiff decides he should do so. Defendants should be able to adequately defend against claims in an efficient manner." <u>Lindsay v. Glick</u>, No. 1:15CV596, 2016 WL 1650771, at *3 (M.D.N.C. Apr. 22, 2016) (unpublished) (Webster, M.J.) (internal citation and quotation marks omitted); <u>see also</u> <u>Ciempa v. Jones</u>, 511 F. App'x 781, 783-84 (10th Cir. 2013) (affirming ruling "not permit[ting] the scope of the lawsuit to be a moving target," barring the plaintiff's "add[ition of] claims to this suit every time prison officials allegedly violate his rights," and recognizing that he remains "free to file additional suits regarding incidents not covered in his [present] complaint" (internal quotation marks omitted)).

Similarly, "Plaintiff cannot use [the O]bjections to plead new claims . . . ." <u>Fuller v. Bryant</u>, No. 3:12CV2755, 2013 WL 2635689, at *3 (D.S.C. June 11, 2013) (unpublished); <u>see also</u> <u>McCray v. Colvin</u>, No. 1:15CV951, 2017 WL 65830, at *1 (M.D.N.C. Jan. 6, 2017) (unpublished) (Biggs, J.) ("[T]he Court is not obligated to consider [a] claim raised for the first time in response to [a r]ecommendation."); <u>White</u>, 2013 WL 791008, at *4 ("Nor does a

petitioner fare better by raising new claims in objections to a recommended ruling.")[9]  In any event, to the extent the Recommitment Order permits Plaintiff to assert a new claim <u>against Defendants</u> for denial of access to courts due to lack of photocopying assistance for the appeals at issue in Exhibits 3 and 5 to the Objections, that claim fails as a matter of law. Specifically, assuming "Plaintiff's appeals in Exhibits 3 and 5 were denied for failure to provide the requisite copies, . . . Plaintiff has [not] shown that <u>[D]efendants</u>' refusal to copy his legal work prejudiced him in [that] litigation or actually impeded his access to the courts."  (Docket Entry 102 at 6-7 (internal ellipsis and quotation marks omitted) (emphasis added).)

---

[9] "[A]lthough district courts need not consider new claims . . . raised for the first time in objections, those courts must, on de novo review, consider all new factual allegations and arguments in the objections directed at existing claims." <u>Cruz v. Marshall</u>, No. 1:13CV1097, 2017 WL 4180016, at *3 n.5 (M.D.N.C. Sept. 20, 2017) (unpublished) (Osteen, J.) (citing <u>Samples v. Ballard</u>, 860 F.3d 266 (4th Cir. 2017)).  Applying the language of <u>Samples</u>, the allegations in the Objections of denial of access to courts for want of photocopying assistance constitute a new claim:

> Although [Plaintiff] did make [a] claim[] regarding other instances of [denial of access to courts] in his [Complaint], he did not claim [denial of access to courts] based on [lack of photocopying assistance]. Rather, he claimed [denial of access to courts] based on [lack of legal assistance] . . . .  [The Complaint's] express reliance on [those] claims of [denial of access to courts is] to the exclusion of other claims of [denial of access to courts].

<u>Samples</u>, 860 F.3d at 275.  "[T]here [i]s no obligation for th[is C]ourt to hear . . . [Plaintiff's] new claim[] . . . ."  <u>Id.</u>

-24-

In that regard, the record reflects the following time-line (and location) of relevant events:

1) on or about <u>May 17, 2013</u>, while housed <u>at PCI</u>, Plaintiff submitted a grievance to Defendant Solomon alleging inadequate legal assistance, but <u>not</u> inadequate photocopying assistance (<u>see</u> Docket Entry 1-1 at 4-7);

2) on or shortly after <u>December 16, 2013</u>, while "housed <u>at [PCI</u>, Plaintiff's] . . . legal documents were copied without incident" (Docket Entry 68 at 2 (emphasis added));

3) "[o]n approximately <u>June 18, 2015</u>, [Plaintiff] transferred from PCI to [<u>WCI</u>]" (<u>id.</u> (emphasis added));

4) on or shortly after <u>January 5, 2016</u>, while housed <u>at WCI</u>, Plaintiff's "legal documents were copied without incident" (<u>id.</u>);

5) "[o]n approximately <u>August 22, 2016</u>, [Plaintiff] . . . transferred <u>from WCI to Dan River</u>," where "the facility assistant superintendent, [Mr.] Roach, tersely informed [Plaintiff], 'We don't do photocopies, Dude!'" (<u>id.</u> (emphasis added));

6) "[i]n approximately <u>February, 2017</u>, Mr. Roach informed [Plaintiff], order or no order, [Mr. Roach] was not making copies for [Plaintiff]" (<u>id.</u> at 3 (emphasis added));

7) "[o]n approximately <u>May 26, 2017</u>," at a hearing in Warren County Superior Court, unidentified "[p]rison officials presented to the [c]ourt that [they] absolutely did not make photocopies for prisoners under any circumstances" (<u>id.</u> (emphasis added));

-25-

8) "[o]n approximately <u>August 28, 2017</u>," following entry of an "[o]rder from the North Carolina Industrial Commission commanding that . . . facility prison officials . . . assist [Plaintiff] with photocopying" legal documents, "<u>Dan River facility</u> officials . . . made the requested copies" (<u>id.</u> (emphasis added));

9) on <u>November 15, 2017</u>, while housed <u>at Dan River</u>, Plaintiff signed his Request for Photocopying Assistance (<u>see</u> Docket Entry 66 at 1) and related affidavit (<u>see</u> Docket Entry 68 at 4), seeking "photocopying assistance so that he [could] make the necessary photocopies of documents and exhibits he intend[ed] to submit to the Court and to the two different sets of Defendants in this action" (Docket Entry 66 at 1);

10) "Exhibit 3 [to the Objections] is an order dated <u>June 19, 2018</u>, from the Clerk for the North Carolina Court of Appeals in case number P17-132 dismissing Plaintiff's petition 'due to failure to attach supporting documents' and denying his 'Request for Suspension of Rules'" (Docket Entry 102 at 4 (emphasis added) (internal citation omitted) (quoting Docket Entry 101-4 at 2));

11) on or about <u>October 30, 2018</u>, Plaintiff transferred from "<u>Dan River Work Farm</u>" to "<u>Rutherford Corr. Center</u>" (Docket Entry 89 at 1 (emphasis added)); and

12) "Exhibit 5 [to the Objections] is an order dated <u>December 21, 2018</u>, from the Clerk for the North Carolina Court of Appeals denying [Plaintiff's request in case number 18-1047 for relief from

-26-

a rule requiring submission of copies of legal filings, due to his lack of 'access to photocopying service']" (Docket Entry 102 at 4 (emphasis added) (internal citation omitted) (citing Docket Entry 101-6 at 2, which denied relief requested in Docket Entry 101-5 at 2); <u>see also</u> Docket Entry 101-5 at 3 (documenting that Plaintiff signed request for relief from photocopy requirement in case number 18-1047 on December 14, 2018, while at "Rutherford Corr. Center")).

The foregoing record material establishes that any denial of photocopying assistance related to the dismissal of Plaintiff's state appeals on June 19, 2018 (as documented in Exhibit 3 to the Objections) and on December 21, 2018 (as documented in Exhibit 5 to the Objections) occurred <u>at Dan River Work Farm and/or Rutherford Correctional Center, not at PCI</u>, where his "legal documents were copied without incident" (Docket Entry 68 at 2).[10] The Complaint, however, identifies all Defendants – except Defendants Perry, Solomon, Huggins, Charlotte Williams (as substituted for "John/Jane Doe P.R.E.A. Coordinator" (<u>see</u> Docket Entry 80 at 3 n.2)), and Hurlocker – as <u>employed at PCI</u>. (<u>See</u> Docket Entry 1, § III; <u>see also</u> Docket Entry 74, ¶¶ 21 (describing Defendant Leonard as Plaintiff's "assigned case manager" at PCI), 23 (referring to Defendants Neely, Valliere, and Mike Williams as "PCI officials"),

_____

[10] Any dismissal of a state appeal "[i]n late 2015," that occurred "solely because [Plaintiff] was unable to provide the necessary copies of the documents" (Docket Entry 93-1 at 3) likewise would have occurred after "June 18, 2015, [when he] transferred from PCI to [WCI]" (Docket Entry 68 at 2).

30 (identifying Defendant Livengood as PCI's prison industry plant manager), 36 (naming Defendant Smith as "PCI's Food Service Manager III"), 45 (labeling Defendant Peeler as "Food Service Manager I" at PCI), 109 (indicating that Defendant Weaver worked at PCI).)

Even more significantly, none of Plaintiff's filings about his claims in this case and/or any photocopying-related issue allege (or otherwise show) that any Defendant in this case (including Defendants Perry, Solomon, Huggins, Charlotte Williams, or Hurlocker) played any part in any refusal to photocopy any of Plaintiff's legal documents, particularly not for the appeals dismissed via the orders attached as Exhibits 3 and 5 to the Objections. (See Docket Entries 1, 1-1, 66, 68, 68-1, 69, 70, 71, 73, 74, 93, 93-1, 93-2, 101, 101-2, 101-3, 101-4, 101-5, 101-6.)[11] That omission warrants entry of judgment as a matter of law for Defendants on any photocopying-related claim Plaintiff may have made in this case, because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

---

[11] As documented above, Plaintiff has identified only one person who allegedly blocked the copying of Plaintiff's legal documents, the Dan River Work Farm "facility assistant superintendent, [Mr.] Roach" (Docket Entry 68 at 2). Notably, Plaintiff filed a separate complaint against Mr. Roach (and numerous others) asserting a variety of claims related to events during Plaintiff's incarceration at the Dan River Work Farm (including for denial of access to courts due to insufficient word-processor access), but did not set out within that pleading any photocopying-related claim. See Compl., Smith v. North Carolina Dep't of Pub. Safety, No. 1:18CV914 (M.D.N.C. Oct. 31, 2018).

"In other words, each [D]efendant is entitled to an individualized assessment as to whether Plaintiff has asserted an actionable claim against that [D]efendant. Plaintiff has asserted no facts regarding the [photocopying-related] conduct of Defendants [in this case]. Plaintiff, therefore, has not asserted an actionable [photocopying-related] claim against [them]." <u>Williams v. Cumberland Cty. Jail</u>, No. 2:19CV224, 2019 WL 3958134, at *2 (D. Me. Aug. 22, 2019) (unpublished); <u>see also</u> <u>Brown v. Montoya</u>, 662 F.3d 1152, 1165 (10th Cir. 2011) ("[I]t is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the complaint make clear exactly who is alleged to have done what to whom . . . ." (internal ellipsis and quotation marks omitted)).[12]

---

[12] Nor could Plaintiff maintain an official capacity, photocopying-related, Section 1983 damages claim against Defendants (given their employment by the State of North Carolina (<u>see generally</u> Docket Entry 1, § III)), because (A) "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's [state] office," <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989), and (B) "a State is not a person within the meaning of § 1983," <u>id.</u> at 64. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." <u>Id.</u> at 71 n.10 (internal quotation marks omitted). However, the Complaint does not request injunctive relief related to photocopying. (<u>See</u> Docket Entry 1, § V; <u>see also</u> Docket Entry 93-1 at 4 (contesting Defendants' argument "that because [Plaintiff is] no longer at [PCI his] claims of inadequate legal assistance are moot," on ground that "no matter which of the State's facilities [he] may transfer to, [he] will remain without access to a law library, legal reference materials, and will not be provided access to persons
(continued...)

**IT IS THEREFORE RECOMMENDED** that Defendants' Summary Judgment Motion (Docket Entry 90) be granted and that summary judgment be entered against Plaintiff (A) on the claim (raised against Defendants in the Complaint) for denial of access to courts for failing to provide adequate legal services, and (B) on any claim (raised against Defendants in Plaintiff's affidavit opposing Defendants' Summary Judgment Motion and/or in Plaintiff's Objections to the Prior Recommendation) for "denial of access to courts . . . [for] fail[ing] to permit [him to] mak[e] required photocopies" (Docket Entry 102 at 7-8).

                                    /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**

October 4, 2019

---

[12](...continued)
trained in the law to assist [him]," but omitting parallel forecast of future photocopying deprivation and instead stating only that transfer from PCI did not remedy state appellate court's prior "reject[ion of his] documents because [he] could not comply with [its] rules of court"); Docket Entry 101 at 7 (listing four categories of "Relief Requested," none of which specify prospective photocopying-related relief (standard font applied)).)

-30-